[No. H004357. Sixth Dist. May 10, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
HORACE BROWN, Defendant and Appellant.

**COUNSEL**

Rodney Richard Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Robert

R. Granucci and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**AGLIANO, P. J.**—Following denial of his motion to suppress evidence pursuant to Penal Code section 1538.5, defendant Horace Brown entered a negotiated plea of guilty to maintenance of a place for sale of cocaine (Health & Saf. Code, § 11366) and possession of a cocaine derivative (Health & Saf. Code, § 11350, subd. (a)). Imposition of sentence was suspended and defendant was placed on probation for two years.

Defendant challenges the trial court's adverse ruling on the ground that both the warrantless entry and subsequent search with warrant of his room were unlawful. We find merit in these contentions and accordingly reverse the judgment.

### Statement of Facts

The motion to suppress evidence was submitted on the basis of the preliminary hearing transcript and additional evidence introduced at the hearing in superior court. Accordingly, our factual summary is derived from the transcripts of both proceedings.

#### Entry Without Warrant

At approximately 10:30 p.m. on October 22, 1987, Officers Manuel Ramirez and Paul Panighetti responded to a call from Steve Stockard, the manager of the apartment complex located at 1132 Owsley Avenue, San Jose. The tenants had told Stockard that, based on traffic in and out of apartment A, they suspected the residents of that apartment were using and selling narcotics.

The officers went to apartment A and knocked on the door. When Mr. Kaiser, the tenant of the apartment, answered the door, Officer Panighetti informed him that they were conducting a narcotics investigation. While the officers were speaking to Kaiser, a man and a woman, later identified as Royal Hall and Gloria Feldt, emerged from a back bedroom. The officers observed smoke coming out of the room exited by Hall and Feldt. Officer Panighetti asked Hall and Feldt if he could speak with them and they stepped out into the hall. Feldt was under the influence of a stimulant and she was placed under arrest.

The officers then returned to apartment A and informed Kaiser that they were continuing their narcotics investigation. Kaiser allowed them to enter the apartment and told them he had sublet the back bedroom to defendant. Officer Panighetti heard voices in that room. He asked Kaiser if anyone else was present. Kaiser replied that there was not, but said the officer could look.

Officer Panighetti opened the door to the back bedroom and saw what appeared to be crack cocaine and related paraphernalia. He also discovered that the voices he had heard were coming from a television set and a radio. Panighetti told Kaiser what he had seen and asked for permission to search the room. Kaiser stated he could not give permission for a search of defendant's room. While Kaiser was speaking to the officers, defendant returned to the apartment. Officer Panighetti informed defendant of what he had observed in his room and asked his permission to search the room for additional narcotics. Defendant gave his consent to search both orally and by signing a written form.

Officer Panighetti then searched the room and seized crack cocaine, narcotics paraphernalia, cocaine and six marijuana cigarettes. Defendant stated that he owned the marijuana, but denied any knowledge of the cocaine. He also stated that Hall and Feldt had had permission to be in his room. Defendant was issued a citation for misdemeanor possession of less than one ounce of marijuana. A later analysis of the marijuana cigarettes revealed that they contained cocaine.

*Search With Warrant*

On October 30, 1987, Officer Panighetti obtained a search warrant for apartment A at 1132 Owsley Avenue. The affidavit recited relevant facts pertaining to the night of October 22, 1987. In addition, the affiant stated he had received information from a confidential citizen informant, "X," subsequent to the events of October 22. According to "X," many people frequented apartment A after 10 p.m.

On November 7, 1987, the search warrant was executed. Entering defendant's room, the officers found and seized a small quantity of cocaine, some narcotics paraphernalia, and six marijuana cigarettes.

The superior court denied the motion to suppress without stating reasons.

*Discussion*

■ "[I]n ruling on a motion under section 1538.5, the superior court sits as a finder of fact with the power to judge credibility, resolve conflicts,

weigh evidence, and draw inferences, and hence . . . on review of its ruling by appeal or writ all presumptions are drawn in favor of the factual determinations of the superior court and the appellate court must uphold the superior court's express or implied findings if they are supported by substantial evidence. [Citation.]" (*People* v. *Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278].) The reviewing court then must measure the facts, as found by the trier, against the constitutional standard of reasonableness. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 597 [174 Cal.Rptr. 867, 629 P.2d 961].) In discharging that duty, this court exercises its independent judgment. (*Id.* at pp. 596-597.)

██ Defendant contends the initial entry into his room was unlawful and the evidence obtained as a result should have been suppressed. The People do not contend Mr. Kaiser had the authority to consent to a search of defendant's room. Indeed it appeared without contradiction he did not and he so informed the officers. (*People* v. *Escudero* (1979) 23 Cal.3d 800, 806-808 [153 Cal.Rptr. 825, 592 P.2d 312].)[1] However, the People argue the warrantless search was justified by exigent circumstances.

"The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home —a zone that finds its roots in clear and specific constitutional terms: 'The right of the people to be secure in their . . . houses . . . shall not be violated.' That language unequivocally establishes the proposition that '[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable government intrusion.' [Citation.] ██ In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." (*Payton* v. *New York* (1980) 445 U.S. 573, 589-590 [63 L.Ed.2d 639, 653, 100 S.Ct. 1371]; accord *People* v. *Ramey* (1976) 16 Cal.3d 263, 275-276 [127 Cal.Rptr. 629, 545 P.2d 1333].)

██ It is the prosecution's burden to prove exigent circumstances which would justify a warrantless search. (*People* v. *Williams* (1988) 45 Cal.3d 1268 [248 Cal.Rptr. 834, 756 P.2d 221].) " '[E]xigent circumstances' means an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence. There is no ready litmus test for

---

[1] Any doubt that Mr. Kaiser informed the officer prior to the initial entry that he had sublet the room was resolved at the hearing in superior court.

determining whether such circumstances exist, and in each case the claim of an extraordinary situation must be measured by the facts known to the officers." (*People* v. *Ramey, supra,* 16 Cal.3d 263, 276.)

■ Here the officers had been contacted about possible drug activity at the apartment. Based on their conversation with Mr. Kaiser, the officers understood that he was not authorized to give consent to a search of defendant's bedroom. They detained two individuals who exited the room. The officers also observed smoke coming from the room and heard voices, however they neither heard nor observed anything in or around the apartment which was physically threatening. The smoke was not identified as marijuana smoke. There was no evidence of the threatened destruction of narcotics. The complaint the officers had received was general in nature and based solely on the traffic in and out of the apartment. Accordingly, we can find no exigent circumstances justifying the officers' initial entry into defendant's room.

The People's reliance on *People* v. *Block* (1971) 6 Cal.3d 239 [103 Cal.Rptr. 281, 499 P.2d 961] is misplaced. In that case, officers were notified that a narcotics suspect was at a certain address. The officers knocked on the door and, after it was opened by the defendant, immediately detected the odor of burning marijuana. They then entered the house and observed a smoking marijuana roach and two pipes, one of which was still warm. After the officers arrested seven suspects, four of whom appeared to be under the influence of marijuana, one of the officers proceeded upstairs and found additional marijuana. The court held the search for additional suspects was justified under those circumstances and the evidence of the additional marijuana should not have been suppressed. Unlike the situation in *Block,* here there was no indication or articulation of a belief that the smoke was in any way related to narcotics activity. The presence of a single individual who was under the influence of a stimulant did not give rise, as in *Block,* to an inference that a "pot party" was in progress.

■ The People next argue defendant gave his consent to the search of his bedroom. They, however, overlook the effect of the initial illegal entry. ■ As the California Supreme Court stated in *People* v. *Sesslin* (1968) 68 Cal.2d 418, 428 [67 Cal.Rptr. 409, 439 P.2d 321]: "[T]o remove the taint from evidence obtained directly as a result of unlawful police conduct requires at least an intervening independent act by the defendant or a third party which breaks the causal chain linking the illegality and evidence in such a way that the evidence is not in fact obtained 'by exploitation of that illegality.' " "A search and seizure made pursuant to consent secured immediately following an illegal entry . . . is inextricably bound up wit... the illegal conduct and cannot be segregated therefrom." (*People* v. *Haven*

(1963) 59 Cal.2d 713, 719 [31 Cal.Rptr. 47, 381 P.2d 927].) ■■ In the instant case, there were no intervening circumstances following the illegal entry. Further, defendant's consent came after he was informed of police observations gained from the unlawful entry.

■■ Defendant next contends the search pursuant to the warrant was unlawful because the fruits of the initial unlawful search were used in the underlying affidavit.

During the search of defendant's bedroom, the officers seized various narcotics and paraphernalia. These facts were incorporated into the affidavit for the search warrant. The affidavit also included information from a confidential citizen informant that there were a number of people going to and from defendant's apartment after 10 p.m.

Here the People cannot rely upon the "good faith" exception announced in *United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405]. ■■ In *Leon,* the court held that evidence obtained by an officer acting in objective good faith reliance on a defective warrant may be introduced in court. However, the court also noted a good faith belief is not objectively reasonable where the magistrate was misled by information in an affidavit that the officer knew or should have known was false, the magistrate abandoned his or her judicial role and issued a warrant which clearly is not based on probable cause, the warrant was facially deficient in failing to particularize the place to be searched or things to be seized, or the affidavit was so lacking in indicia of probable cause as to render belief by officers in its existence to be unreasonable. (*Id.* at p. 923 [82 L.Ed.2d at pp. 698-699].)

In a case factually similar to the instant one, *U.S.* v. *Vasey* (9th Cir. 1987) 834 F.2d 782, the police conducted an illegal search of the defendant's vehicle and included the evidence seized in an affidavit for a search warrant. The *Vasey* court held that the *Leon* good faith exception was inapplicable, noting that "[t]he constitutional error was made by the officer in this case, not by the magistrate as in *Leon*. The *Leon* Court made it very clear that the exclusionary rule should apply (i.e. the good faith exception should not apply) if the exclusion of evidence would alter the behavior of individual law enforcement officers or the policies of their department. [Citations.]" (*Id.* at p. 789.) *Vasey* also stated that "the magistrate's consideration of the evidence does not sanitize the taint of the illegal warrantless search." (*Ibid.*) ■■ Since the officer here erred in entering defendant's room and used evidence seized at that time as a basis for the search warrant, the evidence obtained pursuant to the search warrant must likewise be suppressed.

We next examine whether, if the tainted evidence is removed, there is sufficient evidence which would provide a neutral magistrate with probable cause to issue the warrant. ■ In *Illinois* v. *Gates* (1983) 462 U.S. 213, 238 [76 L.Ed.2d 527, 548, 103 S.Ct. 2317], the Supreme Court held the appropriate test for determining whether an informant's tip establishes probable cause for issuance of a warrant is the totality-of-the-circumstances analysis. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (*Ibid.*) "In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." (*Id.* at p. 244, fn. 13 [76 L.Ed.2d at p. 552].)

■ Here if the tainted evidence is removed, all that remains is the following: "Your affiant has received some information from X [a confidential citizen informant] within the past ten days and after the events of October 22, 1987, that there is a high volume of trafficking coming to and from the apartment at 1132 Owsley Avenue #A, San Jose. X informed your affiant that most of this activity usually occurs after 10:00 p.m. and involves four or five people coming to the apartment, remaining for a short period of time, and then leaving the apartment complex." The information supplied by X was corroborated solely by evidence observed and seized during the officers' illegal entry into defendant's bedroom. Considered in isolation, the information did not establish a fair probability that contraband would be found in defendant's residence. Accordingly, the affidavit is insufficient to establish probable cause for the issuance of a search warrant. The evidence should have been suppressed.

The judgment is reversed.

Cottle, J., and Elia, J., concurred.