[No. F016086. Fifth Dist. Apr. 8, 1992.]

THE PEOPLE, Plaintiff and Appellant, v.
PEGGY INGHAM, Defendant and Respondent.

328

**COUNSEL**

Edward W. Hunt, District Attorney, and J. Bruce Eckerson, Deputy District Attorney, for Plaintiff and Appellant.

Stevan Noxon for Defendant and Respondent.

**OPINION**

**BEST, P. J.**—Defendant, Peggy Ingham, was charged with possession of methamphetamine for sale. (Health & Saf. Code, § 11378.) The trial court ordered all evidence suppressed and discharged defendant. (Pen. Code, § 1538.5.) Thereafter, the district attorney filed this appeal under Penal Code section 1238.

### STATEMENT OF THE FACTS

After being told an anonymous source had implicated defendant's residence in drug sales, Officer Charles Maxwell asked Officer Marianne Mollring to serve a $2,000 traffic warrant on defendant. Officer Mollring was told about the drug allegation and was instructed to bring in defendant.

Officer Mollring, assisted by Officer Rodriguez, went to defendant's house and knocked on the door. Defendant answered but denied being Peggy Ingham. Rather, defendant said she was Peggy's sister and did not have any identification. Defendant then went inside to look for something with her name on it and the officers followed. In the meantime, Officer Mollring radioed dispatch and requested a booking photograph of Peggy Ingham be brought out.

When the photograph arrived, Officer Mollring told defendant she was under arrest. Defendant asked if she could get something out of her purse and was given permission to do so. The purse was located on the living room floor near a wall. Officer Mollring followed defendant as she walked over to the purse and watched defendant take out a large clutch wallet. When defendant opened the wallet, Officer Mollring saw a California driver's

license inside. Defendant then took another small wallet out of her purse and tucked it into her bra. Defendant put the large clutch wallet back in the purse and left the purse on the floor. The purse was so "stuffed" with items it would not close and consequently, the clutch wallet was sticking out of it. Officer Mollring then handcuffed defendant and took both her and her purse to the patrol car. Officer Mollring testified she took the purse because the wallet had identification in it and the wallet was in the purse.

During the trip to the police station defendant became ill and an ambulance was called. Officer Maxwell was notified of their arrival. While in the sally port of the jail, Officer Mollring removed the purse from the patrol car and began searching it on the trunk of her car. Officer Maxwell was present during this search and removed certain items from the purse. An envelope containing narcotics was found in the purse.

A search warrant for defendant's house was issued based primarily on the contraband found in the purse. Pursuant to this warrant, narcotics and pay-owe sheets were seized.

## DISCUSSION

I. *Whether the seizure and search of the purse were reasonable under the Fourth Amendment.*

█ In ruling on a suppression motion, the trial court (1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies the rule of law to the facts to determine whether the law as applied to the established facts is or is not violated. (*People* v. *Williams* (1988) 45 Cal.3d 1268, 1301 [248 Cal.Rptr. 834, 756 P.2d 221].) The appellate court reviews the trial court's resolution of the first inquiry under the deferential substantial-evidence standard. However, the second, which is a pure question of law, is scrutinized under the standard of independent review. The trial court's application of the law to the facts is also subject to independent review. Although this determination is a mixed fact-law question, i.e., the reasonableness of the challenged police conduct, it is predominately one of law. (*Ibid.*)
█ Here, we must review the trial court's legal conclusion that the police conduct was unreasonable.

█ "It is settled Fourth Amendment doctrine that a police officer may, incident to a lawful arrest, conduct a contemporaneous warrantless search of the arrestee's person and of the area into which the arrestee might reach to retrieve a weapon or destroy evidence." (*United States* v. *Burnette* (9th Cir. 1983) 698 F.2d 1038, 1049.) Such searches may be made whether or not

there is probable cause to believe the arrestee may have a weapon or is about to destroy evidence. (*United States* v. *Chadwick* (1977) 433 U.S. 1, 14 [53 L.Ed.2d 538, 550, 97 S.Ct. 2476].) "The potential dangers lurking in all custodial arrests make warrantless searches of items within the 'immediate control' area reasonable without requiring the arresting officer to calculate the probability that weapons or destructible evidence may be involved. [Citations.] However, warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the 'search is remote in time or place from the arrest,' [citation], or no exigency exists." (*Id.* at pp. 14-15.) Once law enforcement officers have reduced personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest. (*Id.* at p. 15.)

 Here, the property at issue is defendant's purse. The " 'search incident to arrest' rule has been interpreted to include a woman's purse as a normal extension of the person subject to search as an item 'customarily carried by an arrested person . . . [and] within the area of her immediate control.' " (*People* v. *Flores* (1979) 100 Cal.App.3d 221, 230 [160 Cal.Rptr. 839].) Further, so long as the purse is in use by the arrestee at the time of her arrest, it does not need to be on her person at that moment to be subject to search. (*People* v. *Belvin* (1969) 275 Cal.App.2d 955, 958 [80 Cal.Rptr. 382].)

 Thus, here, a search of defendant's purse at the time of her arrest would have been justified as incident to the arrest. The purse was in use by defendant and was located on the floor of the room where the arrest took place, i.e., within the area of her immediate control. (Cf. *People* v. *Belvin, supra,* 275 Cal.App.2d at p. 959.) It is of no consequence that the police officers were apparently not concerned about defendant either obtaining a weapon from the purse or destroying evidence in the purse. A search is not invalidated so long as the circumstances, viewed objectively, justify the action. (*Scott* v. *United States* (1978) 436 U.S. 128, 138 [56 L.Ed.2d 168, 178, 98 S.Ct. 1717].)

 However, the search was not conducted until defendant arrived at the police station. In this situation *United States* v. *Chadwick, supra,* requires a search warrant for personal property "not immediately associated with the person of the arrestee" which has been reduced to the officers' exclusive control. (433 U.S. at p. 15.) Nevertheless, other courts have held a purse could be lawfully searched without a warrant at the police station because a

purse is regarded as an extension of the person for purposes of search. (*People* v. *Harris* (1980) 105 Cal.App.3d 204, 216 [164 Cal.Rptr. 296].) The person of an arrestee can be searched either at the place of arrest or at the police station. (*United States* v. *Edwards* (1974) 415 U.S. 800, 803 [39 L.Ed.2d 771, 775-776, 94 S.Ct. 1234].)

Purse searches at the police station have also been upheld as part of the booking process. (*People* v. *Harris, supra*, 105 Cal.App.3d 204, 216-217; *People* v. *Bullwinkle* (1980) 105 Cal.App.3d 82, 87 [164 Cal.Rptr. 163]; *People* v. *Barnett* (1980) 113 Cal.App.3d 563, 575-576 [170 Cal.Rptr. 255]; *People* v. *Decker* (1986) 176 Cal.App.3d 1247, 1252 [222 Cal.Rptr. 689].) It is not inconsistent with the Fourth Amendment and therefore not unreasonable for police to conduct an inventory search as part of the booking procedure. (*People* v. *Decker, supra*, 176 Cal.App.3d at p. 1252.) " 'At the station house, it is entirely proper for police to remove and list or inventory property found on the person or in the possession of an arrested person who is to be jailed.' " (*People* v. *Decker, supra*, 176 Cal.App.3d at p. 1252, quoting *Illinois* v. *Lafayette* (1983) 462 U.S. 640, 646 [77 L.Ed.2d 65, 71, 103 S.Ct. 2605].) The reasonableness of the governmental activity is not controlled by the existence of alternative " ' "less intrusive" ' " means. (*Ibid.*)

Generally, in the cases where the booking search of a purse has been upheld, the purse has been in the defendant's possession at the time of the arrest and the location of the arrest has not been conducive to leaving the purse behind. One exception is *People* v. *Bullwinkle, supra*, 105 Cal.App.3d 82. There, as here, the defendant was arrested in her home and the police took custody of her purse. The purse was later searched at the station as part of the booking process. The appellate court upheld this search noting that booking searches have traditionally been thought to extend to a purse. However, the defendant voluntarily took the purse to the station. The court commented that defendant, "knowing that she was about to be taken to jail, chose to take her purse. She had no reasonable expectation that she could take it to jail without its contents being examined." (*Id.* at p. 89.) Thus, in *Bullwinkle*, by the defendant's choice, the purse was "immediately associated" with her person.

In contrast here, defendant did not choose to take her purse to jail. Rather, she removed what she wanted to take with her from the purse and thus essentially "disassociated" herself from it. Consequently, the purse should not be considered an extension of defendant's person at the time of her arrest. Further, since defendant was arrested in her home, the purse could have been safely left behind. Nevertheless, the police officers picked up the purse and took it to the station. Thus, the search of the purse at the station

cannot be justified as either incident to her arrest or part of the booking procedure.

Probable cause to search a purse at the scene of the arrest can also justify a later search at the police station. In *People* v. *Decker, supra,* 176 Cal.App.3d 1247, the court held since there was probable cause to search the defendant's purse for contraband at the scene of the arrest, the fact the purse was not searched until it was brought back to the police station was irrelevant. (*Id.* at p. 1251.)

Here, the trial court concluded the officers would have been justified in taking the large wallet containing defendant's identification, but they did not have probable cause to take the purse. The trial court found the wallet was "very big" and, in fact, would not fit into the purse. Defendant could not close the purse.

Based on these facts, the trial court's determination there was no justification for taking the purse is correct. Officer Mollring saw defendant's driver's license in the wallet. The wallet was a large, discrete item which did not even fit inside the "container," i.e., the purse. It was the driver's license the officers wanted to seize to show defendant had falsely represented her identity in violation of Penal Code section 148.9. Further, defendant admitted she was Peggy Ingham before she was arrested. Since there was no probable cause to search the purse at the time of the arrest, the search at the police station cannot be justified on a probable cause theory.

In sum, the search of defendant's purse at the police station does not fit within any of the exceptions to the warrant requirement. Defendant's actions with respect to the purse support the conclusion the purse was not an extension of her person at the time it was searched. Thus, the search at the station cannot be justified either as incident to the arrest or as a booking search. Further, there was no probable cause to search the purse itself. Thus, the trial court properly suppressed the evidence found inside the purse.

II. *Whether, assuming the invalidity of the search and seizure of the purse, it was objectively reasonable for the police officers to rely on the search warrant.*

The district attorney further contends the evidence seized at defendant's residence pursuant to the warrant should not have been suppressed on the ground the officers executed the warrant in good faith. (*United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405].) However, the good faith exception is inapplicable where, as here, the search warrant is

based on illegally seized evidence. (*People* v. *Brown* (1989) 210 Cal.App.3d 849, 857 [260 Cal.Rptr. 293].) The constitutional error in such a case is made by the police officer, not by the magistrate as was the case in *Leon.* (*Ibid.*)

Further, if the tainted evidence is removed from the warrant affidavit at issue here, the only evidence left is an anonymous allegation that drugs were purchased at defendant's residence. This evidence is insufficient to provide a neutral magistrate with probable cause to issue the warrant. (Cf. *People* v. *Brown, supra,* 210 Cal.App.3d 849, 858.) Thus, the trial court properly suppressed the evidence seized pursuant to the warrant.

DISPOSITION

The order suppressing evidence is affirmed.

Stone (W. A.), J., and Thaxter, J., concurred.