[No. H008973. Sixth Dist. July 10, 1992.]

THE PEOPLE, Plaintiff and Appellant, v.
ALICIA F. MADRID, Defendant and Respondent.

## COUNSEL

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Morris Beatus and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Appellant.

Lori Klein, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

**STONE, J.**\*—Following her waiver of preliminary hearing, defendant Alicia F. Madrid was accused by information of one count of possession for sale of cocaine (Health & Saf. Code, § 11351) and one count of possession of cocaine (Health & Saf. Code, § 11350). The superior court entered an order of dismissal after granting defendant's motion to suppress evidence pursuant to Penal Code section 1538.5. The People appeal from the dismissal on the ground that defendant lacked standing to challenge the legality of an automobile search which, in turn, supplied probable cause for issuance of a warrant authorizing the search of her home. (Pen. Code, §§ 1238, subds. (a)(7), (c), 1385, subd. (a).) For reasons set forth below, we reverse.

*Facts*

On May 5, 1991, Monterey County Deputy Sheriff Jim Miller saw a Ford Bronco parked at the dead end of a rural road. There were four men seated

---

\*Judge of the Santa Clara Superior Court sitting under assignment by the Chairperson of the Judicial Council.

in the car, one of whom was later identified as defendant's husband, Manuel Mendoza. As Deputy Miller drove toward the vehicle he could not detect any mechanical problems nor could he detect any unlawful activity. When the deputy stopped his patrol car behind the Bronco, he saw the right front passenger turn around. Upon seeing the deputy, this individual said something to the driver who immediately began making "some kind of movements." The deputy was unable to discern what the driver was doing. The deputy exited his vehicle, approached the Bronco, and opened the driver's door. After he did so, he saw an open container of beer on the front floorboard. Deputy Miller ordered the occupants to leave the vehicle and step back to his patrol car. He then searched the passenger compartment for additional open containers. During the course of his search, the officer discovered "drugs" on the back floorboard.

Deputy Miller initially testified that he approached the car because he did not know "what they [were] doing out there. They could be up to a number of things." The officer admitted, however, that when testifying about this incident at the preliminary hearing of a companion case, he testified that he had checked the car out of "curiosity."

In an affidavit submitted in support of a search warrant for defendant's residence, the affiant stated that Deputy Miller noticed the occupants making suspicious movements as he approached the vehicle. It appeared to the officer that the "subjects were attempting to conceal something in the rear [floorboard] area of the vehicle. [¶] Deputy Miller contacted [the driver] and found an open container of beer near [his] feet. Deputy Miller also noticed other cans of beer inside the vehicle and asked all four subjects to exit the vehicle so that he . . . could retrieve the other cans of beer. After the four subjects got out of the vehicle, and as Deputy Miller was retrieving some cans of beer from the rear seat area . . . , Deputy Miller noticed a white powdery substance thrown on the [floorboard] area along with a plastic baggy. This was the same area where Deputy Miller noticed [three occupants] acting suspicious[ly], as if they were hiding something in this area. Deputy Miller examined the white powder which was on the [floorboard] further, and recognized the powder to be cocaine. . . . [¶] Deputy Miller formed the opinion that the cocaine and plastic baggy found in the vehicle were consistent with the storage and transportation of cocaine and therefore placed all four subjects under arrest. . . ."

According to the affidavit, the four occupants of the vehicle were searched, as was the car itself. Over $1,800 in cash was found on the four men and a subsequent search of the Bronco resulted in the seizure of one-quarter pound of cocaine, discovered in the center console of the car.

The affiant concluded that the cocaine was possessed for sale based on the quantity of the cocaine seized, the currency found in possession of the occupants, the absence of ingesting paraphernalia, and the fact that none of the suspects was found to be under the influence of cocaine.

Based on the information contained in the search warrant affidavit, the magistrate issued a search warrant for the residence of Manuel Mendoza. Upon execution of the warrant, police apparently seized the evidence (cocaine and paraphernalia) which served as the basis for the present charges. It appears that defendant shared the searched residence with her husband, Manuel Mendoza.[1]

### Procedural History

Although there was some mention of *Franks* v. *Delaware* (1978) 438 U.S. 154 [57 L.Ed.2d 667, 98 S.Ct. 2674], defendant's argument for suppression in the trial court appears to be premised solely upon the "fruit of the poisonous tree" doctrine pronounced in *Wong Sun* v. *United States* (1963) 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407].[2] Defendant essentially argued that she had standing to challenge the legality of the search warrant on the ground that information establishing probable cause for the warrant was tainted because it was obtained as a result of the unlawful search of the Ford

---

[1]Although there are brief references to a search of Mendoza's residence, to the seizure of contraband there, to the marital status of defendant and Mendoza, and to the fact that the searched residence was defendant's, none of these references occurs in the evidentiary portion of the suppression hearing. Rather, they occur in the discussions of counsel at the preliminary hearing, in points and authorities in support of the suppression motion filed by Mendoza, and in argument of counsel at the suppression hearing. The People did not press any of these points in the trial court, nor do they raise them on appeal. Accordingly, we deem these facts to be conceded for purposes of this appeal.

[2]Defendant did not file any moving papers in support of the suppression motion. The points and authorities filed on behalf of her husband relied on a "fruit of the poisonous tree" theory, particularly apt in his case in view of his status as an occupant of the searched vehicle. During the hearing on the suppression motion, defendant's attorney stated that the affidavit did not contain facts indicating the illegality of the car search and argued that defendant thus had standing to challenge the search of her home. However, after the prosecutor claimed that defendant had failed to establish deliberate omissions or misstatements (as required by *Franks*), counsel responded: "I think where [the prosecutor] misses the point is that we are moving to suppress based on an illegality that occurred that was based in [*sic*] the search warrant. We are not going on misstatements or even—even though we mentioned omissions, we are really going [*sic*] as a *Franks* v. *Delaware* situation. It is [fruit] of the poisonous tree argument. *People* [v.] *Brown* is right on point in that case. There is no discussion in *People* [v.] *Brown* about whether they have standing and is there a *Franks* situation or any of that. It just goes strictly on—you can't use the product of an illegal search and place it in the search warrant and thereby be able to justify the search. . . ."

Read in context, we believe counsel's remarks indicate sole reliance on "fruit of the poisonous tree" and disavowal of any attack based on *Franks*.

Bronco. Since material facts establishing the illegality of the initial search were omitted from the affidavit, the warrant was tainted and invalid.[3]

The People responded by arguing (1) defendant had failed to establish that the affiant deliberately omitted or misstated material facts;[4] and (2) defendant had no standing to assert the illegality of the antecedent search as a ground for contesting the sufficiency of probable cause supporting the warrant.

The trial court issued a written decision granting defendant's motion to suppress evidence. The court made factual findings regarding the initial search and ruled that the search was unconstitutional. The court further found that the antecedent search, along with additional facts supplied by the affidavit (i.e., the subsequent search of the car) had served as the basis of probable cause for issuance of the search warrant. Noting that the "details of Deputy Miller's opening the car door in order to make his observations" were omitted from the search warrant affidavit, the court found that the magistrate was thereby "deprived of the necessary facts to conclude, as this court has, that the search was unlawful."

On the question of defendant's standing, the court reasoned that had the omitted and material facts been included in the affidavit, any reasonable magistrate would have concluded that the search of the car was unlawful and thus would have refused to authorize issuance of the warrant. Any attempt by the officer to obtain authorization of the warrant on the ground that the "[objects] of the search warrant lack[ed] standing to object to the obviously illegal search" would have been soundly rejected by the magistrate: "The point is, once the magistrate concludes the search is illegal, that is for all practical purposes, the end of the matter."

Relying on this court's decision in *People* v. *Brown* (1989) 210 Cal.App.3d 849 [260 Cal.Rptr. 293], the trial court concluded that "since the search warrants in question are based entirely on the illegal search, probable cause no longer exists for issu[uance] of the warrants."

## Discussion

■■■■ The People argue, as they did below, that defendant lacks standing to contest the search of the Ford Bronco and thus is equally barred from

---

[3]As noted above, the record contains only those moving papers filed by Mendoza. However, based on conversation at the hearing wherein defendant waived her right to preliminary examination, and based on arguments presented at hearing on the suppression motion, it appears that defendant joined in the motion brought by codefendant Mendoza. The People do not contend otherwise.

[4]The People do not raise this point on appeal.

challenging information in the search warrant affidavit procured as a result of that search, even if the initial search was unlawful.

Defendant, on the other hand, asserts she has standing to challenge the search warrant affidavit because: (1) the warrant contained a material omission; (2) the magistrate would not have issued the warrant if the affidavit had contained a complete account of the illegal vehicle search; and (3) defendant has standing to challenge the search of the Bronco (a) as a member of an alleged conspiracy to possess and sell cocaine, or (b) by virtue of her marriage to Mendoza.

## I. *Standing*

█ Since the adoption, by voter initiative, of article I, section 28, subdivision (d) of the California Constitution, otherwise known as Proposition 8, the courts of this state may exclude evidence seized pursuant to an unlawful search or seizure "only if exclusion is also mandated by the federal exclusionary rule applicable to evidence seized in violation of the Fourth Amendment." (*In re Lance W.* (1985) 37 Cal.3d 873, 896 [210 Cal.Rptr. 631, 694 P.2d 744].) In making this determination, we are bound by decisions of the United States Supreme Court (*id.* at p. 882) and, of course, by California Supreme Court cases interpreting those decisions. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].) Although decisions of lower federal courts are not binding precedent, they are persuasive authority. (*People* v. *Neer* (1986) 177 Cal.App.3d 991, 999 [223 Cal.Rptr. 555].)

Prior to the adoption of section 28, subdivision (d), the California Supreme Court recognized an independent basis for exclusion under article I, section 13 of our state Constitution (*In re Lance W., supra*, 37 Cal.3d at p. 879) and thus accorded "standing to object to the introduction of evidence seized in violation of the rights of a third person . . . ." (*Ibid.*) However, our vicarious exclusionary rule did not survive the passage of Proposition 8 as a basis for exclusion of evidence. (*Ibid.*) Accordingly, we must look to federal constitutional jurisprudence to settle the important questions at issue here.

█ The United States Supreme Court has considered Fourth Amendment standing on numerous occasions and has consistently held that Fourth Amendment rights are personal rights which may not be vicariously asserted. (*Rakas* v. *Illinois* (1978) 439 U.S. 128, 133-134 [58 L.Ed.2d 387, 394-395, 99 S.Ct. 421].) The right to claim the protection of the Fourth Amendment depends upon whether the defendant has a legitimate expectation of privacy

in the area searched. (*United States* v. *Salvucci* (1980) 448 U.S. 83, 93 [65 L.Ed.2d 619, 629, 100 S.Ct. 2547].) Stated another way, the crucial inquiry is "whether the challenged search and seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it." (*Rakas* v. *Illinois, supra,* 439 U.S. at p. 140 [58 L.Ed.2d at p. 399].) Not only must the defendant, by his or her conduct, have " 'exhibited an actual (subjective) expectation of privacy,' " but that subjective expectation of privacy must be one that society is prepared to recognize as reasonable and thus objectively justifiable under the circumstances. (*Smith* v. *Maryland* (1979) 442 U.S. 735, 740 [61 L.Ed.2d 220, 226-227, 99 S.Ct. 2577].)

Cases dealing with a defendant's standing to assert a Fourth Amendment violation have focused on various factors, including whether a defendant asserted a property or possessory interest in the area searched or the property seized (*Rakas* v. *Illinois, supra,* 439 at p. 148 [58 L.Ed. at p. 404]), whether a defendant has a right to exclude others from access to the searched premises (*id.* at p. 149 [58 L.Ed. at pp. 404-405]), whether a defendant is legitimately on the premises (*id.* at pp. 147-149 [58 L.Ed. at pp. 403-405]), whether a defendant has entered into an arrangement indicating "joint control and supervision of the place searched" (*United States* v. *Pollock* (9th Cir. 1984) 726 F.2d 1456, 1465), whether a defendant had a subjective expectation that the item seized or the place searched would remain free from governmental intrusion, and whether a defendant took normal precautions to maintain his or her privacy (*Rawlings* v. *Kentucky* (1980) 448 U.S. 98 [65 L.Ed.2d 633, 100 S.Ct. 2556]). These inquiries, however, may not serve as substitutes for a factual finding that the proponent of the motion had a legitimate expectation of privacy in the area searched. (See, e.g., *United States* v. *Salvucci, supra,* 448 U.S. at pp. 91-93 [65 L.Ed. at pp. 627-629].)

### A. *"Fruit of the Poisonous Tree"*

Application of these general principles has led several federal circuit courts to conclude that a defendant may not challenge the legality of a search warrant on the ground that the information establishing probable cause for the warrant was the tainted fruit of the illegal search or seizure of a third party. (See, e.g., *U.S.* v. *Jaramillo-Suarez* (9th Cir. 1991) 950 F.2d 1378, 1387; *United States* v. *Kovac* (9th Cir. 1986) 795 F.2d 1509, 1510-1511; *United States* v. *Davis* (D.C. Cir. 1979) 617 F.2d 677, 689-692 [199 App.D.C. 95]; *United States* v. *Shovea* (10th Cir. 1978) 580 F.2d 1382, 1385-1387.)

At least one circuit court has also held that a defendant lacked standing to challenge the unlawful search or seizure of a third party where that information led to the warrantless search of the defendant's home. (See *United States* v. *Chase* (9th Cir. 1982) 692 F.2d 69, 70.)

This court's recent decision in *People* v. *Llamas* (1991) 235 Cal.App.3d 441 [286 Cal.Rptr. 467], relied on *Chase* when we accepted the defendant's concession that he could not contest the warrantless search of his motel room on the basis of the illegal detention and arrest of a third party. (*Id.* at p. 446.) In addition, although *Llamas* reached the merits of the defendant's claim that the third party's consent to search the motel room was the result of coercive police conduct, we refused to discuss whether the consent had been tainted by the illegal detention because the defendant lacked standing to raise the issue. (*Ibid.*)

Conversely, in *People* v. *Brown*, *supra*, 210 Cal.App.3d 849, on which the trial court relied, and in similar cases such as *People* v. *Leichty* (1988) 205 Cal.App.3d 914 [252 Cal.Rptr. 669], and *People* v. *Winters* (1983) 149 Cal.App.3d 705 [196 Cal.Rptr. 918], the fruits of an unlawful search or seizure were used in an affidavit for a search warrant directed against the property of the same person whose Fourth Amendment rights were violated by the antecedent search. Those cases all held that the prior illegality tainted the subsequent search. However, there is a crucial distinction between those cases and the matter at bar: each of those defendants had a reasonable expectation of privacy which had been invaded by the initial search or seizure.

In the instant case, we have no doubt that defendant lacked standing to challenge the search of the Ford Bronco. She was not present at the time of the search; neither did she assert any valid ownership or possessory interest in the car. Indeed, none of the factors traditionally conferring standing to assert a Fourth Amendment violation is present in this case.

Defendant claims standing as a member of an alleged conspiracy to possess and sell cocaine, or alternatively, by virtue of her marriage to Mendoza and her community property rights in the money seized from her husband. These claims are patently without merit. As the People point out, the former argument is an assertion of "target" standing, a concept which the high court overruled in *United States* v. *Salvucci*, *supra*, 448 U.S. at page 85 [65 L.Ed.2d at pages 623-624]. The latter argument does not find support in the record; there was no evidence that the funds seized from Mendoza were community property. In any event, we agree with the People that any possible legal entitlement to the money seized does not confer standing in the absence of a reasonable expectation of privacy in the area searched. (See *United States* v. *Salvucci*, *supra*, 448 U.S. at pp. 91-93 [65 L.Ed.2d at pp. 627-629].) As for any contention that defendant's marital status should permit her to assert vicariously the Fourth Amendment rights of her husband, as noted above, the United States Supreme Court has consistently rejected

any vicarious assertion of Fourth Amendment rights. Suffice it to say, defendant was without standing to challenge the initial auto search.

We are sensitive to defendant's argument that she possessed a legitimate expectation of privacy in her own home and thus should be deemed to possess standing to challenge the warrant upon which the search of her home was predicated. However, cases analyzing the question of standing confine their inquiry to the initial police conduct which has been challenged (in this case, the search of the car) and whether that particular search or seizure violated the defendant's Fourth Amendment rights. (See, e.g., *Rakas* v. *Illinois*, *supra*, 439 U.S. at p. 133 [58 L.Ed.2d at p. 394].) Simply stated, the general principles of law on standing, as articulated by the high court, permit a defendant to prevail on a "fruit of the poisonous tree" claim only if he or she has standing regarding the violation which constitutes the poisonous tree (again, in this case, the automobile search). (4 LaFave, Search & Seizure (2d ed. 1987) § 11.14, p. 371.) Were we to accept defendant's reasoning, we would be compelled to ignore established precedent on the question of standing and instead focus on defendant's privacy interest in her own home (that is, the poisonous fruit) rather than on her privacy interest in the car. This we cannot do.

Nor do we find any sound basis for distinguishing this case from our decision in *Llamas*. Although there was no search warrant in *Llamas*, that distinction in our view undermines defendant's position. Is a defendant's right to be secure in his or her own home less important where there is a warrantless search? Would a decision broadening the concept of standing in warrant cases encourage warrantless searches? Are we not bound to give more deference, not less, to searches conducted pursuant to a warrant which have thus been subjected to the independent scrutiny of a magistrate? The answers to these queries leads us to the inevitable conclusion that the rationale of *Llamas* applies with equal force to a situation such as is presented here.

In sum, the trial court erred in holding that defendant has standing to assert a Fourth Amendment violation based on the "fruit of the poisonous tree" doctrine.

### B. *Franks* v. *Delaware*

 Although she does not couch it in such terms, defendant's appellate assertion of standing based on the theory that the warrant contained material omissions appears to be premised upon the Supreme Court's decision in *Franks* v. *Delaware*, *supra*, 438 U.S. 154. There are fatal flaws in this approach, however.

First, as noted above, defendant's objections below appear to be predicated solely upon the "fruit of the poisonous tree" theory. Thus, any objection based on *Franks* is not cognizable on appeal. (*People* v. *Smith* (1986) 180 Cal.App.3d 72, 80 [225 Cal.Rptr. 348].)

Second, even if we give defendant the benefit of the doubt and further assume that she had standing to raise a *Franks* challenge (contra, *U.S.* v. *Guthrie* (9th Cir. 1991) 931 F.2d 564, 569-570 [where defendant did not have reasonable expectation of privacy in warehouse, he lacked standing to raise a *Franks* objection to search of warehouse which supplied probable cause for search of defendant's home and storage locker]), *Franks* imposes certain requirements that were not adhered to in this case.

■ To mandate an evidentiary hearing, defendant must first make a substantial preliminary showing that the affidavit contains material omissions or misstatements which were made either intentionally or with a reckless disregard for the truth. Such evidence must focus on the state of mind of the affiant. (*Franks* v. *Delaware, supra,* 438 U.S. at pp. 155-156, 171 [57 L.Ed.2d at pp. 672-673, 681-682].) If these requirements are met, the defendant is entitled to an evidentiary hearing where he or she must establish by a preponderance of the evidence that the false statements were made either deliberately or recklessly, and were necessary to a finding of probable cause. If he or she prevails, the search warrant is voided and the evidence suppressed. Innocent or negligent omissions or misstatements, on the other hand, will not defeat the warrant. (*Id.* at pp. 154-155, 171 [57 L.Ed.2d at pp. 672-673, 681-682].)

■ Defendant did not meet any of the prerequisites mandated by *Franks*. In addition, although the superior court found that there were material omissions in the affidavit, it did not make any explicit finding that these omissions were either intentionally or recklessly made. If the court made an *implicit* finding to that effect, it does not find evidentiary support in the record given the lack of any testimony by the affiant, or by Deputy Miller on the subject of what facts were relayed to the affiant. (See, e.g., *People* v. *Costello* (1988) 204 Cal.App.3d 431 [251 Cal.Rptr. 325] [mere discrepancy between the actual facts and those recited in affidavit does not establish reckless disregard for truth; there must be some evidence of affiant's mental state for such a showing].)[5]

■ Even if defendant could surmount these problems, she could not overcome the holding in *People* v. *Cook* (1978) 22 Cal.3d 67 [148 Cal.Rptr.

[5]We do not mean to suggest that a discrepancy between the actual facts and those recited in the affidavit may never suffice to establish an affiant's reckless disregard for the truth. We mean only to state that the discrepancy in this case was not, in itself, sufficient to warrant such a conclusion.

605, 583 P.2d 130] that an officer-affiant "need not include in his affidavit information that is relevant only to the lawfulness of the evidence it recites" (*id.* at p. 94) and that such omissions do not render the affidavit vulnerable to a probable cause challenge. (*Ibid.*) In other words, omissions such as those allegedly made here do not affect the probable cause finding.

Although *Cook* makes it clear that a defendant in such cases is not left without a remedy (i.e., a fruit of the poisonous tree challenge), as noted above, such a remedy is no longer available to a defendant who lacks standing to challenge the search or seizure of a third party which then gives rise to probable cause for a warrant directed at the defendant's property.

Contrary to defendant's contentions, the holding in *Cook* is binding precedent; it is not dicta, nor has it been superseded by any decision of the United States Supreme Court. We therefore find no basis for upholding the superior court's order, to the extent that it was premised upon *Franks* v. *Delaware*.

## DISPOSITION

The judgment of dismissal is reversed. The superior court is directed to vacate its order suppressing the evidence obtained as a result of the warrant search.

Cottle, Acting P. J., and Bamattre-Manoukian, J., concurred.

Respondent's petition for review by the Supreme Court was denied October 16, 1992.