Filed 1/28/25  P. v. Macario CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DEMETRIO MACARIO,<br><br>        Defendant and Appellant. | A168756<br><br>(City & County of San Francisco Super. Ct. No. CRI-23003557) |

Defendant Demetrio Macario challenges his conviction on two counts of possession of narcotics for sale on the grounds that the trial court erroneously denied his motion to suppress evidence of his crimes pursuant to Penal Code section 1538.5 (motion to suppress).[1]  Defendant argues that because his conviction was based entirely on evidence seized during an unlawful detention and search, it must be reversed.  We affirm.[2]

---

[1] Unless otherwise stated, all statutory citations herein are to the Penal Code.

[2] Defendant also argues that should we find that he forfeited his challenge, defense counsel rendered ineffective assistance by failing to renew his motion to suppress at trial.  Since we affirm on the merits, there is no need to address defendant's forfeiture argument.

1

On June 23, 2023, defendant was charged by amended information with possession of fentanyl for sale (Health & Saf. Code, § 11351; count I) and possession of methamphetamine for sale (Health & Saf. Code, § 11378; count II).[3]  A jury trial began on June 15, 2023.

## I.    *The Prosecution's Case.*

On March 9, 2023, around 8 p.m., San Francisco Police Officer Jared Harris was conducting a narcotics surveillance operation, known as a "spotting" operation, on the corner of Seventh and Market Streets in San Francisco, an area well known for its frequent narcotics sales.  Officer Harris was familiar with the area and had participated in more than 100 similar narcotics operations.  For this particular spotting operation, Officer Harris was using binoculars to spot narcotics sales from an elevated position and using a predesignated team of about four other officers to perform the actual arrest(s) if he observed a sale.

Officer Harris's view of the corner was partially obstructed because it was raining and a pillar and an overhanging storefront entrance were in the way.  However, Officer Harris was able to observe defendant, wearing a backpack and standing with a scooter about five to ten feet from an unknown male.  As Officer Harris continued to observe, three individuals approached the unknown male in quick succession, each giving him money.  The unknown male counted the individuals' money before reaching into the backpack on defendant's back and withdrawing "plastic bags and some white objects, which [Officer Harris] suspected to be narcotics . . . ."  The unknown

---

[3] The original complaint was filed on March 13, 2023, and included three counts.  On June 13, 2023, at the start of trial, the court granted the prosecutor's motion to dismiss one count of possession for sale of cocaine base.

male also retrieved a digital scale from defendant's "sweater pocket." Defendant stayed still and did not try to prevent the unknown male from reaching into his backpack or pocket. The unknown male then knelt down and used the digital scale to measure out three portions of the white substance. Once the portions were wrapped in plastic, the unknown male distributed the packages to the three individuals who had given him money.

After witnessing these transactions, Officer Harris deduced that defendant and the unknown male were distributing fentanyl for sale and that defendant was acting as a "holder" of narcotics and/or money for the unknown male (hereinafter, unknown dealer).[4] Accordingly, Officer Harris instructed the predesignated officers at ground level to arrest defendant and the unknown dealer.

Less than two minutes later, the other officers approached defendant and the unknown dealer to make the arrest. The unknown dealer fled through the entrance of the nearby BART station and was lost in the crowd. However, the officers were able to arrest defendant based on the information provided by Officer Harris. One of the arresting officers removed defendant's backpack in order to handcuff him. After Officer Harris joined the others, he searched defendant's pockets and the backpack. In the backpack, Officer Harris found "six plastic bags of the chalky white substance, three bags of a crystalline substance, it looked like methamphetamine, and plastic twists of what looked like cocaine base and a plastic [bag] of a—some rectangular pills . . . ." In defendant's pockets, Officer Harris found the digital scale, tin

---

[4] San Francisco Police Officer Michael Montero, an expert in street-level narcotics transactions, explained that a "holder" is someone who is compensated with money or narcotics for carrying money or narcotics while another person conducts the actual sale. The "holders" frequently hold digital scales as well, as defendant did in this case.

foil, pipes that could be used to smoke narcotics, and a straw. The substances were subsequently tested and confirmed to be methamphetamine and fentanyl.

## II. *The Defense Case.*

Defendant testified that the backpack he was wearing belonged to the unknown dealer. The unknown dealer offered to give defendant food and narcotics if defendant held the backpack for one hour. Defendant did not know or ask what was inside the backpack. Defendant simply stood still, wearing the backpack, without watching when the unknown dealer reached into the backpack and into defendant's pocket. Defendant did not know about the scale in his pocket until his arrest. While defendant suspected the unknown dealer was selling drugs when the unknown dealer retrieved items from inside the backpack, defendant never looked to confirm his suspicion.

## III. *The Verdict, Sentence and Appeal.*

On June 26, 2023, the jury found defendant guilty of both counts. On August 18, 2023, the trial court suspended execution of a prison sentence of three years eight months and placed defendant on probation for two years, consisting of a two-year concurrent probation term on each count. Defendant timely appealed.

## DISCUSSION

Defendant contends the trial court erroneously denied his motion to suppress because his detention, the warrantless search of the backpack, and the seizure of narcotics and other contraband from within the backpack violated the Fourth Amendment of the United States Constitution. Defendant also argues defense counsel rendered ineffective assistance in violation of the Sixth Amendment of the United States Constitution by failing to renew the motion to suppress at trial. We begin with the governing law.

4

## I. *Legal Framework:  Fourth Amendment.*

The Fourth Amendment of the United States Constitution (Fourth Amendment) protects against unreasonable searches and seizures. (U.S. Const., 4th Amend.)  To that end, an officer generally must secure a warrant before conducting a search of private property.  "Warrantless searches 'are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' (*Katz v. United States* (1967) 389 U.S. 347, 357 [19 L.Ed.2d 576, 88 S.Ct. 507], fns. omitted; [citation].)"  (*People v. Lopez* (2019) 8 Cal.5th 353, 359.)

One such exception, relevant here, is a search incident to a lawful arrest.  (*People v. Fayed* (2020) 9 Cal.5th 147, 182.)  "The justification for a search incident to arrest rests on '(1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial.' "  (*People v. McKay* (2002) 27 Cal.4th 601, 617.)  The prosecution bears the burden of proving the applicability of the exception.  (*People v. Castro* (2022) 86 Cal.App.5th 314, 319.)

" 'In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if they are supported by substantial evidence.  [Citation.]  We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment.' "  (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 232.)  We affirm so long as the ruling is correct, even if the lower court's reasoning is wrong.  (*People v. Session* (2023) 93 Cal.App.5th 723, 730–731.)

## II. *Factual Record.*

Defense counsel filed the motion to suppress on March 15, 2023.  The motion was heard at the preliminary hearing on March 27, 2023.  Defense

counsel argued probable cause did not exist to arrest defendant or search his person or belongings because "no evidence suggests that he was involved in anything more than carrying a backpack."

The prosecutor opposed the motion, arguing probable cause to arrest defendant existed based on the testimony provided by the arresting officers.[5] In particular, the officers observed defendant acting as a holder of narcotics while an unknown dealer made several narcotics sales. During these sales, the officers saw the unknown dealer take suspected narcotics from defendant's backpack and weigh them on a digital scale that he took from defendant's pocket.

The trial court agreed with the prosecution that the officer's observations established probable cause to arrest defendant, noting that it "strains credulity" to suggest defendant "merely stood there" and was "not an active participant" in the narcotics transactions. Accordingly, the trial court denied the motion to suppress and defendant was held to answer for trial.

## III.    *Legal Analysis.*

### A.    **Defendant was lawfully detained and arrested.**

Defendant first contends his detention and arrest were unlawful and thus could not serve as justification for the subsequent search and seizure because there was no probable cause. We disagree.

A warrantless arrest by a law enforcement officer is reasonable under the Fourth Amendment when there is probable cause to believe a criminal offense has been or is being committed. (*People v. McKay, supra*, 27 Cal.4th at p. 618 ["so long as the officer has probable cause to believe that an

---

[5] The People assert, and defendant implicitly concedes, the testimony provided by Officers Harris and Clifford at the preliminary hearing was consistent with their subsequent trial testimony.

6

individual has committed a criminal offense, a custodial arrest—even one effected in violation of state arrest procedures—does not violate the Fourth Amendment"].)  "Probable cause exists when the facts known to the arresting officer would persuade someone of 'reasonable caution' that the person to be arrested has committed a crime.  [Citation.]  '[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts . . . .'  [Citation.]  It is incapable of precise definition.  [Citation.] ' "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt," ' and that belief must be 'particularized with respect to the person to be . . . seized.'  [Citation.]" (*People v. Celis* (2004) 33 Cal.4th 667, 673.)

In this case, Officer Harris, the officer who ordered defendant's arrest, had been involved in over 100 narcotics enforcement operations and over 40 hours of narcotics identification training.  Officer Harris testified at the preliminary hearing that on the day in question he was conducting a narcotics enforcement operation in an area known for the frequency of its narcotics sales.  As Officer Harris conducted the operation, he witnessed the unknown dealer being approached, in quick succession, by three individuals who handed him money.  The unknown dealer took the money and reached into the backpack on defendant's back and retrieved three objects and some plastic bags.  The unknown dealer then reached into defendant's pocket and retrieved a digital scale.

At this point, as Officer Harris continued watching, the unknown dealer "knelt next to the scale and then, one at a time, weighed a chunk of white substance, which [he] suspected to be fentanyl. [¶] He then put that white substance inside of the plastic bags he had pulled from the backpack." "He then wrapped those chunks of white objects in plastic bags after

7

weighing them and handed them off to the three people who had given him money."

Officer Harris explained the activity he observed on the day in question was typical of hand-to-hand narcotics dealing, with defendant "basically playing the role of a holder, holding most of the narcotics. That way, if the dealer should be apprehended, there's not a great loss in product." Thus, based on his experience in conducting narcotics enforcement operations, Officer Harris deduced defendant was involved in selling narcotics and ordered his arrest.

On this record, the probable cause standard was met. Officer Harris had a reasonable basis for concluding defendant possessed narcotics with the intent to distribute. (*People v. Celis, supra*, 33 Cal.4th at p. 673.) Moreover, this record undermines defendant's claim that he was "standing 'like a statue,' [and] did not participate in what the man in the hoodie was doing . . . ." As Officer Harris confirmed, defendant was acting as a typical "holder" for the unknown dealer, standing close to him and wearing the backpack that contained the narcotics that the unknown dealer then handed to the customers in exchange for money. Defendant's detention and arrest were therefore lawful.

**B.    The search of the backpack was lawful.**

Defendant next contends the search of his backpack was illegal because he had a reasonable expectation of privacy in the backpack. We again disagree.

When, as here, a defendant is lawfully arrested based on probable cause, "a search incident to the arrest requires no additional justification." (*People v. Macabeo* (2016) 1 Cal.5th 1206, 1213.) Further, a search incident to arrest extends to items on the defendant's person and in his or her

possession. " 'It is settled Fourth Amendment doctrine that a police officer may, incident to a lawful arrest, conduct a contemporaneous warrantless search of the arrestee's person and of the area into which the arrestee might reach to retrieve a weapon or destroy evidence.' [Citation.] Such searches may be made whether or not there is probable cause to believe the arrestee may have a weapon or is about to destroy evidence. [Citation.] 'The potential dangers lurking in all custodial arrests make warrantless searches of items within the "immediate control" area reasonable without requiring the arresting officer to calculate the probability that weapons or destructible evidence may be involved.' " (*People v. Ingham* (1992) 5 Cal.App.4th 326, 330–331.)[6]

Based on these principles, Officer Harris's search of defendant's pockets and the backpack on his back contemporaneously with his arrest for possessing narcotics for sale was justified. The record demonstrates that defendant wore the backpack the entire time that Officer Harris observed defendant and the unknown dealer engaged in the narcotics transactions. Further, defendant at no point abandoned or disclaimed ownership of the backpack prior to the time he was arrested while still wearing it. As such, Officer Harris and the other arresting officers could have reasonably concluded the backpack belonged to defendant and was subject to search incident to his lawful arrest. (See *People v. Ingham, supra*, 5 Cal.App.4th at p. 331 ["a search of defendant's purse at the time of her arrest would have

---

[6] We note that " 'warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the "search is remote in time or place from the arrest," [citation], or no exigency exists.' " (*People v. Ingham, supra*, 5 Cal.App.4th at p. 331.) Here, however, the search occurred at the same time and place of defendant's arrest, rendering this exception inapplicable.

been justified as incident to the arrest" since the purse "was located on the floor of the room where the arrest took place, i.e., within the area of her immediate control"]; *In re Humberto O.* (2000) 80 Cal.App.4th 237, 243–244 ["the search did not exceed the permissible scope" when it "occurred contemporaneously with the . . . arrest" and the "property searched was a backpack that defendant was wearing at the time of his arrest"]; *People v. Flores* (1979) 100 Cal.App.3d 221, 230 ["The generally accepted 'search incident to arrest' rule has been interpreted to include a woman's purse as a normal extension of the person subject to search as an item 'customarily carried by an arrested person . . . [and] within the area of her immediate control' "].)  Defendant's contrary argument thus fails.

## C.     No need to address ineffective assistance claim.

Lastly, because defendant's arrest and the search of the backpack were constitutionally valid, defense counsel's failure to renew the motion to suppress at trial resulted in no prejudice to defendant warranting reversal. The order and judgment stand.

## DISPOSITION

The judgment is affirmed.


Jackson, P. J.


WE CONCUR:

Simons, J.
Chou, J.


A168756/*People v. Demetrio Macario*

10