Filed 11/19/13  P. v. Pickett CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>RICKY ANDRE PICKETT,<br><br>        Defendant and Appellant. | B241373<br><br>(Los Angeles County<br>Super. Ct. No. BA389843) |

APPEAL from an order and a judgment of the Superior Court of Los Angeles County, Gail Ruderman Feuer, Judge.  Affirmed.

Donna L. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Kenneth C. Byrne and Seth P. McCutcheon, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Ricky Andre Pickett appeals the judgment resulting from his conviction for carrying a concealed dirk or dagger in violation of former Penal Code section 12020, subdivision (a)(4). He contends the trial court erred in finding he did not have standing to challenge the warrantless search of a garage which ultimately led to the discovery of his concealed knife. He also contends section 12020 violates the Second Amendment to the United States Constitution. We affirm the order denying the suppression motion and the judgment of conviction.

## FACTS[1]

On October 20, 2011, Los Angeles Police Officer Richard Fox, his partner Officer David Acee, and other officers conducted a trespass investigation at a property on Flower Street. The property was surrounded by a fence and had either a "No Trespassing" or "Closed to the Public" sign on it. The residence on the property was vacant, with boarded up windows. The officers did not have a warrant.

The officers went to the garages at the rear of the property. Through an open door in one of the garages at the rear of the property, Officer Fox saw four individuals sitting next to objects which appeared to be cocaine pipes. All four of these individuals were detained. One of these individuals was Andre Boatwright, who acted as a quasi-caretaker of the property. Appellant and La-Toya Augustine were found in the adjacent connected garage, and were detained. A pat-down search of appellant revealed a knife in an open and locked position in his pocket.

---

[1] The facts are taken from the hearing on appellant's motion to suppress.

DISCUSSION

1. Motion to suppress evidence

Appellant contends he was an invited guest on the searched property and so the trial court erred in ruling he lacked standing to challenge the warrantless search of the garage. He further contends his motion should have been granted on the merits, as there was no legitimate exception to the warrant requirement. We see no error in the trial court's ruling concerning standing. Because appellant lacked standing, we do not address whether a warrant was required.

a. Standard of review

"In ruling on a motion to suppress, the trial court judges the credibility of the witnesses, resolves any conflicts in the testimony, weighs the evidence, and draws factual inferences." (*People v. Williams* (2006) 145 Cal.App.4th 756, 761.) "[O]n appeal from the denial of a suppression motion, we review the evidence in a light favorable to the trial court's ruling, adopt those express and implied findings of fact that are supported by substantial evidence, and independently determine whether those findings support the court's legal conclusion . . . ." (*People v. Hoeninghaus* (2004) 120 Cal.App.4th 1180, 1197-1198.)

b. Standing requires a reasonable expectation of privacy in the place searched

"[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable; i.e., one that has 'a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'" (*Minnesota v. Carter* (1998) 525 U.S. 83, 88 quoting *Rakas v. Illinois* (1978) 439 U.S. 128, 134.)

3

"There is no set formula for determining whether a person has a reasonable expectation of privacy in the place searched, but the totality of the circumstances are considered." (*In re Rudy F.* (2004) 117 Cal.App.4th 1124, 1132, citation omitted.)[2] Generally, however, a person does not have a reasonable or legitimate expectation of privacy in a place if he has no legal right to be in that place. "[T]he United States Supreme Court [has] held that 'a "legitimate" expectation of privacy by definition means more than a subjective expectation of not being discovered. A burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as "legitimate."' [Citation.] The same principle applies to auto thieves [citations]; and trespassers. [Citation.]" (*People v. Satz* (1998) 61 Cal.App.4th 322, 325-326.)

"A defendant has the burden at trial of establishing a legitimate expectation of privacy in the place searched or the thing seized. [Citations.]" (*People v. Jenkins* (2000) 22 Cal.4th 900, 972.)

### c. The court did not err in finding appellant lacked standing.

The trial court found appellant was not an invited guest on the property. We defer to the court's finding, which is supported by substantial evidence.

It was undisputed appellant was not the owner of the property, nor did he pay rent to Parvish Bananan, the owner of the property. Officers Fox and Acee testified that, according to Bananan, no one had been given permission to be on the property, with the

---

[2] Factors indicating an expectation of privacy include "whether a defendant asserted a property or possessory interest in the area searched or the property seized [citation], whether a defendant has a right to exclude others from access to the searched premises [citation], whether a defendant is legitimately on the premises [citation], whether a defendant has entered into an arrangement indicating 'joint control and supervision of the place searched' [citation], whether a defendant had a subjective expectation that the item seized or the place searched would remain free from governmental intrusion, and whether a defendant took normal precautions to maintain his or her privacy [citation]." (*People v. Madrid* (1992) 7 Cal.App.4th 1888, 1896.)

possible exception of Boatwright, who might have been authorized to "watch over" the property.

Appellant testified he did have permission to be on the property. He testified he heard Bananan give Boatwright and Augustine permission to be on the property, and he in turn received permission from Boatwright and Augustine to be on the property. The trial court found appellant's testimony not credible.

It was the trial court's job to assess credibility and resolve the conflicts in the evidence. The trial court found appellant's testimony not credible. We defer to the court's finding. Appellant is a convicted felon and there were some inconsistencies in his testimony. The condition of the property itself cast doubt on appellant's claim that the owner invited people to enter the property.

Absent appellant's testimony, there was no evidence he was legally on the property. Since appellant was not an invited guest on the property, the trial court correctly ruled appellant had no standing to challenge the search of the property.

Appellant relies on three federal cases involving searches of tents to argue he has standing even if he was in the garage illegally. (*U.S. v. Sandoval* (9th Cir. 2000) 200 F.3d 659, 661; *U.S. v. Gooch* (9th Cir. 1993) 6 F.3d 673; *La Duke v. Nelson* (9th Cir. 1985) 762 F.2d 1318.) This reliance is misplaced. In *Gooch* and *La Duke*, there is nothing to indicate the tents were illegally placed. In *Sandoval* it was uncertain whether the defendant needed permission to camp on public lands. In any event, "camping on public land, even without permission, is far different from squatting in a private residence. A private residence is easily identifiable and clearly off-limits, whereas public land is often unmarked and may appear open to camping." (*U.S. v. Sandoval*, *supra*, 200 F.3d p. 661; see *Zimmerman* v. *Bishop Estate* (9th Cir.1994) 25 F.3d 784, 787-788 [squatter in residential home did not have objectively reasonable expectation of privacy], superseded by statute on other grounds as stated in *Margolis v. Ryan* (9th Cir. 1998) 140 F.3d 850, 854-855.)

Appellant's reliance on *People v. Roman* (1991) 227 Cal.App.3d 674 is also misplaced. That case simply holds that absent abandonment of or eviction from a rented

5

garage, the tenants' failure to pay the full amount of rent for the rental period did not give the landlord authority to allow police to search the garage. (*Id*. at p. 677.) Appellant did not enter the property with the owner's permission initially and did not pay any rent, so *Roman* does not assist him.

Since appellant was not legitimately in the garage, he had no reasonable expectation of privacy, and no standing to challenge the police entry into the garage. Appellant does have standing to challenge the pat-down search of his person, but he does not make any independent argument that the pat-down search was unreasonable.

## 2. Constitutionality of former section 12020

Appellant was convicted under former section 12020, subdivision (a)(4), which barred a person from carrying "concealed upon his or her person any dirk or dagger." Appellant contends his conviction must be reversed because this statute was unconstitutional on its face under the Second Amendment to the United States Constitution. Specifically, he contends interpreting former section 12020 to prohibit possession of a concealed switchblade knife, pocket knife, steak knife or butter knife in one's home makes the statute constitutionally overbroad. [3]

Respondent contends appellant has forfeited this claim by failing to raise it in the trial court. Appellant contends if any forfeiture resulted from his counsel's inaction, he received ineffective assistance of counsel.

---

[3] On January 1, 2012, section 12020 was repealed and replaced with section 21310. Respondent contends appellant's claim is not moot because section 21310 is very similar to former 12020. Although technically correct (see *Northeastern Fla. Chapter v. City of Jacksonville* (1993) 508 U.S. 656, 662, fn. 3), respondent misses a more fundamental reason that the claim is not moot: repeal of the law did not vacate appellant's felony conviction and five year jail sentence.

6

## a. Appellant's claim is forfeited

Appellant forfeited this argument by failing to raise it below. A criminal defendant who fails to assert the violation of a right below forfeits his or her right to raise that claim on appeal. (*People v. Yarbrough* (2008) 169 Cal.App.4th 303, 310.) Appellant offers no reason for his failure to raise this issue below apart from ineffective assistance of counsel. The relevant United States Supreme Court decisions regarding the right to bear arms were both decided prior to the charges being filed against appellant. (*District of Columbia v. Heller* (2008) 554 U.S. 570 [128 S.Ct. 2783, 171 L.Ed.2d 637](*Heller*) and *McDonald v. City of Chicago, Ill.* (2010) 561 U.S. __ [130 S.Ct. 3020, 177 L.Ed.2d 894].)

## b. Appellant did not receive ineffective assistance of counsel

In order to establish a claim of ineffective assistance of counsel, appellant must show his counsel's performance fell below an objective standard of reasonableness, and that, but for counsel's error, a different result would have been reasonably probable. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 694; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington*, *supra*, 466 U.S. at p. 694.)

"When a claim of ineffective assistance is made on direct appeal, and the record does not show the reason for the counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation." (*People v. Anderson* (2001) 25 Cal.4th 543, 569.)

Here, there is nothing to show appellant's counsel was asked for an explanation. Appellant contends there could be no satisfactory reason for his counsel's failure to raise the Second Amendment claim. As we discuss below, there is no merit to appellant's claim and thus no reasonable probability appellant would have received a more favorable

7

outcome if his counsel had raised this issue below. Thus, appellant's claim of ineffective assistance fails.

### c. Former section 12020 was not unconstitutional on its face.

Statutes are presumed to be constitutional. (*United States v. Morrison* (2000) 529 U.S. 598, 608.) A facial challenge to the constitutional validity of a statute considers only the text of the statute itself, not its application to the particular circumstances of an individual. (*Sturgeon v. Bratton* (2009) 174 Cal.App.4th 1407, 1418.) To prevail on a facial challenge to the constitutionality of a statute, a litigant must show that no set of circumstances exists under which the statute would be valid. (*United States v. Benevento* (D. Nev.2009) 633 F.Supp.2d 1170, 1193.)

When evaluating the constitutionality of a statute, the level of scrutiny applied depends on the nature of the right affected by the statute and the manner in which the right is impacted. (*District of Columbia v. Heller, supra,* 554 U.S. at p. 628.) Where, as here, the statute regulates but does not completely ban the possession of a knife, it is analyzed under the intermediate scrutiny standard. (*People v. Mitchell* (2012) 209 Cal.App.4th 1364, 1374-1375 [applying intermediate scrutiny standard to claim that former section 12020 violates the Second Amendment].) "Under the intermediate scrutiny test, the statute must serve an important governmental interest and there should be a reasonable fit between the regulation and the governmental objective [Citation.] The regulation need not be the least restrictive means of serving the governmental interest, but it should be narrowly tailored to serve the interest, . . . and should leave open ample alternative means of exercising the protected right." (*Ibid.*)

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." (*District of Columbia v. Heller*, *supra*, 554 U.S. at p. 577.) The Second Amendment guarantees an individual's right to bear arms, and specifically to possess and

8

carry weapons in case of confrontation. (*Id.* at p. 595; *People v. Flores* (2008) 169 Cal.App.4th 568, 573.)

The Second Amendment is violated by a statute which absolutely prohibits holding and using handguns for self-defense in the home and also prohibits rendering any lawful firearm in the home operable for the purpose of immediate self-defense. (*District of Columbia v. Heller*, *supra*, 554 U.S. at p. 635; *People v. Flores*, *supra*, 169 Cal.App.4th at p. 573.) These bans amount to a prohibition of an entire class of "arms." (*District of Columbia v. Heller*, *supra*, 554 U.S. at pp. 628 & fn. 27, 634; *People v. Flores*, *supra*, 169 Cal.App.4th at pp. 573-574.) However, there are limits to the right to keep and carry arms. The majority of the 19th-century courts held prohibitions on carrying concealed weapons lawful under the Second Amendment. (*District of Columbia v. Heller*, *supra*, 554 U.S. at pp. 626-627.)

Based on *Heller*'s express approval of statutory proscriptions against carrying concealed weapons, appellate courts have found statutes restricting the carrying of concealed firearms do not violate the Second Amendment. (*People v. Ellison* (2011) 196 Cal.App.4th 1342, 1348-1351; *People v. Flores*, *supra*, 169 Cal.App.4th at pp. 574-577; *People v. Yarborough*, *supra*, 169 Cal.App.4th at pp. 311-314.) The Sixth District Court of Appeal has held former section 12020 did not violate the Second Amendment. (*People v. Mitchell, supra,* 209 Cal.App.4th at p. 1375.) We reach the same conclusion.

Unlike the absolute prohibition of handguns found unconstitutional in *Heller*, former section 12020 did not absolutely ban dirks or daggers. Former subdivision (a)(7) allowed dirks or daggers to be openly carried on the waist in a sheath, and former subdivision (a)(4) allowed the concealed carrying of non-locking folding knives, a folding knife that was not a switchblade, or a pocketknife so long as the blade of the knife was not exposed and locked into an open position. Thus, former section 12020 provided a reasonable means for carrying a knife for self-defense.

*Heller* was also concerned with a prohibition of arms in the home. But, former section 12020 did not ban unconcealed knives in any location and did not expressly ban concealed knives in the home. (*People v. Mitchell*, *supra*, 209 Cal.App.4th at p. 1376

9

[former section 12020 "[did] not contain any express restriction on concealment of weapons on the person at home, and to the extent it [was] capable of being applied improperly in the home context [], any overbreadth [could have been] cured on a case-by-case basis."].)  In this case, former section 12020 was not interpreted to bar concealed weapons in a home.

Former section 12020, subdivision (a)(4), did not violate the Second Amendment to the United States Constitution.  Appellant's arguments to the contrary are rejected.

DISPOSITION

The order denying the suppression motion and the judgment are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KUMAR, J.[*]


I concur:


KRIEGLER, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

MOSK, J., Concurring

I concur.

I agree with the court in *Wooden v. United States* (D.C. Cir. 2010) 6 A.3d 833, which said as follows: "All this said, the discourse in [*District of Columbia v.*] *Heller* [(2008) 554 U.S. 570 (Heller)] is focused exclusively on 'arms' or 'weapons,' meaning firearms when read in context. Indeed, *Heller* acknowledged the handgun as 'the quintessential self-defense weapon.' Furthermore, in citing the Oregon case [*State v. Kessler* (1980) 614 P.2d 94], the Supreme Court only indirectly recognized the possible Second Amendment protection for knives in common use at the time; the Court did not elevate to *Heller's* text, and thus give express endorsement to, the list of colonial arms mentioned by the Oregon court and the secondary sources it cited. [¶] Perhaps a detailed *Heller-type* analysis would result in a conclusion that some kinds of knives today -- perhaps ordinary pocket knives or key chain knives, if not switchblades -- are analogous to arms 'typically possessed by law-abiding citizens for lawful purposes' in colonial days, even though 'not in existence at the time of the founding.' If so, such knives may qualify for Second Amendment protection. But if *Heller* 'error' there be, we cannot find it 'plain' – 'clear' or 'obvious' -- that the *Heller* Court would extend its ruling to knives carried *exclusively* for use as a dangerous weapon in self-defense. Absent the kind of historical analysis the Court applied to guns, *Heller* does not give us the assurance necessary to find plain error in the CDW instructions as applied to knives." (*Id.* at pp. 839-840, fns. omitted.)


MOSK, Acting P. J.

1