Filed 12/23/25  P. v. Baldonado CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>MARGIE NIEVES BALDONADO,<br><br>      Defendant and Appellant. | D086352<br><br><br>(Super. Ct. No. FWV21001208) |


APPEAL from a judgment of the Superior Court of San Bernardino County, Michael Knish, Judge.  Affirmed.

Jason L. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

Margie Nieves Baldonado appeals her conviction for first degree murder.  She asserts the trial court erred by denying her motion to suppress

evidence. The evidence she sought to exclude was the location of another person's vehicle obtained from an automatic license plate reader database. Given that Baldonado did not own the vehicle and was not in the vehicle at the time of the data collection, we conclude she is not entitled to assert a Fourth Amendment challenge to exclude this evidence. At Baldonado's request, we have also reviewed the reporter's transcript of an in camera hearing for potential exculpatory evidence from the investigation of an unrelated murder and conclude the trial court did not abuse its discretion in determining no exculpatory evidence existed as part of that investigation. Accordingly, we affirm the judgment.

BACKGROUND

I.

*Trial Evidence*

Margarito Villasenor and Luis Sanchez were both members of the El Sereno Criminal Street Gang. In January 2021, Villasenor sent Sanchez Facebook messages suggesting there was hostility between them.[1]

On February 2, 2021, Sanchez sent Baldonado messages on Facebook telling her he "want[ed] a rider" and asking if she was "down or not." On February 15, Baldonado sent Sanchez a Facebook message stating she loved him and, "I want to be your Bonnie and I want you to be my Clyde."

---

[1] The messages read: "Lame ass don't forget you was 86 out the hood until 'I' talk to the homies if letting your lame ass come back. Your hefita got shot by some punk ass movies and you still and done shit about it but smoke that crap. . . Right now I'm chilling laying low but I'll be at your door step soon. You ask my primo for my address" you "ask me for it sucka – [address] – Come on through lame;" and, "Keep Ithaca out your mouth to sucka." Ithaca is a subgroup of the El Sereno gang, of which Villasenor claimed to be part.

Around February 21, 2021, Baldonado contacted Villasenor on Facebook messenger. On March 11 or 12, the conversation moved to text messages, and the two discussed meeting in person. The text message exchange ended the morning of March 14, when the two met in person and drove together to a restaurant in Fontana, California. They arrived there shortly before 11:00 a.m.

Just after 11:00 a.m., a City of Fontana automatic license plate reader[2] captured a picture of Sanchez's vehicle, a black Cadillac CTS sedan with California license plate number 8UCY488, approximately two miles from the restaurant where Baldonado and Villasenor were dining. At around 11:47 a.m., a surveillance camera at a nearby residence captured a black Cadillac sedan parked on a residential street near the restaurant. A man wearing black clothes exited the car and removed the license plates.[3] Circumstantial evidence suggested it was Sanchez in the same black Cadillac on the surveillance footage.

While Baldonado and Villasenor were at the restaurant, at approximately 11:50 a.m., the restaurant surveillance camera showed a black Cadillac sedan without license plates park next to the restaurant. A man wearing black clothes, a hat, and a bandana over his face exited the car with a gun. According to a diner, when the man entered the restaurant, he screamed, "Where is he at?" Baldonado answered, "Here. Here." The man

---

[2] The City of Fontana Police Department operates an automatic license plate reader system to assist with investigations. Upon entry of a license plate number, the system provides the date, time, intersection, and direction of travel of the vehicle for each license plate read.

[3] On March 11, 2021, Sanchez obtained a new set of license plates, number 8UCY488, claiming his prior license plates were lost.

3

fired multiple shots at Villasenor, killing him.  The man then fired additional shots at another customer, ran out of the restaurant, and fled the scene in the black Cadillac.  Restaurant surveillance footage showed Baldonado leaving the restaurant with the shooter before separately running from the scene on foot.

Five days later, on March 19, 2021, Baldonado posted a photograph of her and Sanchez on Facebook, captioned, "We are now officially together." That same day, Sanchez was arrested for the murder of Villasenor.  Police seized a Cadillac key fob from him.

A few days after his arrest, Sanchez called Baldonado from jail on a recorded line.  Baldonado stated, "Your cousin just told me to just hide out," and mentioned someone "want[ed] to get rid of the Blackbird."

On March 25, 2021, Baldonado was arrested after leaving a hotel room. Inside the room, there was a love letter addressed to Sanchez.  Police collected her phone as evidence and discovered that Baldonado searched, "I do not have my keys to my CTS 2008 Cadillac how do I turn off my alarm." She also sent a message to someone stating "im on the run forn187 [*sic*]," the Penal Code section for murder.

## II.

### *Relevant Trial Proceedings*

The People charged Sanchez and Baldonado with first degree murder (Pen. Code,[4] § 187, subd. (a)).[5]

---

[4]     Undesignated statutory references are to the Penal Code.

[5]     Sanchez was also charged with possession of a firearm by a felon (§ 29800, subd. (a)(1)) and various prior convictions.

Prior to trial, Sanchez's counsel brought a section 1538.5 motion to suppress the evidence obtained by the license plate reader without a warrant. Sanchez contended this warrantless search violated his Fourth Amendment rights based on his expectation of privacy in his movements, citing *Carpenter v. United States* (2018) 585 U.S. 296 (*Carpenter*), and *United States v. Jones* (2012) 565 U.S. 400. At the hearing, Baldonado's counsel joined that objection without making any separate argument. The trial court denied the motion, ruling there was no reasonable expectation of privacy in a single location in the public domain based on *United States v. Knotts* (1983) 460 U.S. 276, 281 ("A person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another.").

Sanchez and Baldonado were tried concurrently with separate juries. At trial, the People moved to admit the photograph of Sanchez's Cadillac sedan from the license plate reader. Counsel for Sanchez objected based on foundation, and Baldonado's counsel joined. The court admitted the evidence.

During trial, the prosecution discovered that Sanchez's Cadillac was involved in another homicide being investigated in Los Angeles which occurred several days before Villasenor's murder. The prosecutor disclosed the fact of this investigation to the defense.

The prosecutor's understanding was that the shooter was the passenger of the vehicle and was not Sanchez, and the police had no information as to the identity of the driver. Sanchez's counsel moved for discovery to obtain those records to examine for exculpatory evidence. The prosecutor suggested a section 1054.7 in camera hearing, which the court held. At the hearing, a witness testified regarding the investigation. Following the hearing, the

5

court ruled that the police did not possess any exculpatory evidence required to be disclosed to the defense.

Baldonado's jury convicted her of first degree murder, and the trial court sentenced her to 25 years to life in prison.[6]

DISCUSSION

I.

*Baldonado Is Not Entitled to Contest the Legality of the Challenged Search*

Baldonado contends the trial court erred by denying her motion to suppress the license plate reader evidence, which she claims violated her Fourth Amendment rights. The People respond that Baldonado lacks standing to assert the Fourth Amendment claim and, regardless, the claim is meritless. We agree that Baldonado is not entitled to assert a Fourth Amendment violation here.[7] For that reason, we do not address the merits of the claim.[8]

---

[6] According to the respondent's brief, Sanchez's case ended in a mistrial, but he was later convicted of Villasenor's murder in a subsequent trial.

[7] As noted in the respondent's brief, the United States Supreme Court explained that when a criminal defendant seeks to exclude evidence based on a violation of the Fourth Amendment, "the analysis belongs more properly under the heading of substantive Fourth Amendment doctrine than under the heading of standing." (*Rakas v. Illinois* (1978) 439 U.S. 128, 140 (*Rakas*).) Thus, rather than using the term standing, we refer to whether Baldonado was "entitled to contest the legality of [the] search and seizure." (*Ibid.*)

[8] Because we dispose of the Fourth Amendment claim on the grounds that Baldonado cannot bring the claim, we deny as unnecessary her request for judicial notice of the Fontana Police Department Policy Manual on Automatic License Plate Readers.

Baldonado contends Fontana's license plate reader system tracked movements of individuals such that the search required a warrant under *Carpenter, supra*, 585 U.S. at pages 310–311, and *Leaders of a Beautiful Struggle v. Baltimore Police Department* (4th Cir. 2021) 2 F.4th 330, 345 (*Beautiful Struggle*). Because her argument is based on Sanchez's expectation of privacy in his movements, not Baldonado's expectation of privacy in her own movements, she cannot challenge the evidence the license plate reader obtained regarding Sanchez's vehicle's location.

"Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." (*Rakas, supra,* 439 U.S. at pp. 133–134 [cleaned up]; *People v. Madrid* (1992) 7 Cal.App.4th 1888, 1895 [The same standard applies in California: "[T]he courts of this state may exclude evidence seized pursuant to an unlawful search or seizure 'only if exclusion is also mandated by the federal exclusionary rule applicable to evidence seized in violation of the Fourth Amendment.'"].) "The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing." (*Alderman v. United States* (1969) 394 U.S. 165, 171–172.) "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." (*Rakas*, at p. 131, fn. 1.)

"When the standing issue is not litigated in the trial court, the appellate court can reach a legal conclusion as to whether the defendants had standing if the record is adequate.  The record must contain the facts necessary to determine whether the defendant had an interest in connection with the searched premises that gave rise to a reasonable expectation on his part of freedom from governmental intrusion upon those premises." (*People v. Workman* (1989) 209 Cal.App.3d 687, 694.)  We review this issue de novo when the facts are undisputed.  (*Ibid*.)

Here, Baldonado does not dispute that the license plate reader did not register her location, as she was either driving in a different vehicle to the restaurant or already at the restaurant with Villasenor at the time.  It is also undisputed that the vehicle captured by the license plate reader belonged to Sanchez, not Baldonado.  Therefore, she is not asserting a violation of a personal right as required to bring a Fourth Amendment claim.  She cannot vicariously assert Sanchez's Fourth Amendment right.

To circumvent this clear rule, Baldonado argues "*the public*" has "an expectation of privacy . . . against mass surveillance" of people's "movement over time."  While it is true that all members of the public *have* certain privacy rights, an individual may only *assert* a Fourth Amendment right when she has suffered a personal violation of her own right.  The cases Baldonado relies on do not hold otherwise.

Contrary to Baldonado's argument, *Carpenter* does not stand for the proposition she can assert a Fourth Amendment violation of another individual based on a societal expectation of privacy.  (See *Carpenter, supra*, 585 U.S. at pp. 310–311.)  There, the appellant's ability to bring his Fourth Amendment claim was not at issue because the case dealt with "Carpenter's anticipation of privacy in *his* physical location" and movements based on *his*

8

cell phone's location. (*Id.* at p. 311, italics added; see *id.* at pp. 301–302, 306, 310–311.) The court recognized that "individuals have a reasonable expectation of privacy in the whole of *their* physical movements." (*Id.* at p. 310, italics added.)

Likewise, *Beautiful Struggle*, where the plaintiffs sought an injunction based on potential future harm to themselves,[9] does not permit a defendant in a criminal proceeding to challenge the admission of evidence of another individual's past location information. The principles discussed in *Rakas* and *Alderman* have not been overruled.

Baldonado contends the reference in *Beautiful Struggle* to "everyone's movements" supports her argument that mass collection of data results in collective harm. In full, the court explained while "[p]eople understand that they may be filmed by security cameras on city streets, or a police officer could stake out their house and tail them for a time[,] . . . capturing everyone's movements outside during the daytime for 45 days goes beyond that ordinary capacity." (*Beautiful Struggle, supra*, 2 F.4th at p. 345.) This language does not eliminate the requirement that one seeking to exclude evidence under the Fourth Amendment assert a violation of her own rights.

Similarly, in the final case cited by Baldonado, the plaintiff claimed a violation of his own Fourth Amendment rights. (*Sanchez v. Los Angeles Dept. of Transportation* (9th Cir. 2022) 39 F.4th 548, 554 ["Sanchez alleges that the

---

9 The court did not engage in an in-depth discussion of standing, stating, "Plaintiffs are grassroots community advocates in Baltimore. Their advocacy necessarily involves traveling through and being present outdoors in areas with high rates of violent crime. For example, Erricka Bridgeford leads Ceasefire Baltimore and, in that capacity, visits scenes of gun violence as soon as possible after a crime takes place." (*Beautiful Struggle, supra*, 2 F.4th at p. 335.)

collection of the MDS location data itself—without more—violates *his* constitutional rights today." (Italics added.)].)

## II.

### *No Abuse of Discretion in Section 1054.7 Ruling*

Baldonado also requests that we examine the transcript of the section 1054.7 in camera hearing and review the trial court's decision denying the motion for discovery related to the other criminal investigation. The People do not object to this request. We have reviewed the transcript of the in camera hearing and see no abuse of discretion by the trial court.

The Penal Code requires the prosecution to disclose exculpatory evidence to the defense. (§ 1054.1, subd. (e).) Required disclosures may be "denied, restricted or deferred" for specified "good cause," including "possible compromise of other investigations by law enforcement." (§ 1054.7.) The trial court has discretion to permit a party to make the good cause showing in camera. (*Ibid.*) We review the trial court's ruling on discovery matters, including the disclosure of exculpatory evidence, for abuse of discretion. (*People v. Thompson* (2016) 1 Cal.5th 1043, 1105.) It is not an abuse of discretion to deny a defendant's motion to compel non-exculpatory evidence. (*People v. Elder* (2017) 11 Cal.App.5th 123, 133.)

Having independently reviewed the in camera hearing, we conclude the trial court did not abuse its discretion in denying Sanchez's discovery motion based on lack of exculpatory evidence. The information available in the investigation of the other homicide on a separate occasion, in a different location, involving unknown perpetrators, was irrelevant to Baldonado's and Sanchez's roles in the murder of Villasenor.

10

## DISPOSITION

The judgment is affirmed.

DO, Acting P. J.

WE CONCUR:

KELETY, J.

CASTILLO, J.

11