Opinion
JONES, J.
Defendant was charged with a violation of Health and Safety Code section 11550 (being unlawfully under the influence of a controlled substance). He successfully moved to suppress evidence of the arresting officer’s observations pursuant to Penal Code section 1538.5. The People appeal.
*Supp. 14 On April 13, 1979, Los Angeles Police Officer Ridenour, assigned to the narcotics detail, went to defendant’s home after receiving information that defendant was dealing in and using heroin. The officer knew the defendant from previous arrests for being under the influence of heroin. Defendant’s house was at the back of a front yard which extended about 100 feet from the street. Both house and yard were enclosed by a chain-link fence, with an unlocked gate at the front sidewalk and a gate across the driveway. The mailbox for the residence was located beside the front gate.
When Officer Ridenour arrived he saw defendant in the front yard, about 75 feet away. The officer opened the front gate and walked up to defendant. He told Mendoza that he was conducting a narcotics investigation and that he had information that defendant was dealing in heroin. At that point, the officer noticed defendant’s eyes to be pinpointed, observed numerous scab formations on his inner arm and noted that defendant’s speech was slow and deliberate. Based on the officer’s narcotic expertise he formed the opinion that defendant was under the influence of an opiate; defendant was then arrested.
The officer was not able to observe the defendant’s condition until he approached him after entering the front gate of the fenced yard. There was no sign prohibiting entry, nor did defendant ever express objection to the officer’s entering the yard until after defendant was in custody.
The trial court held that the existence of the fence around the property and the gate at the front indicated defendant’s reasonable expectation of privacy in the enclosed area. The motion to suppress was accordingly granted; we reverse.
In applying the principles of law to the cases which come before us, we should not lose sight of the everyday facts of life. Fencing around the front yard of a residence is a common situation and ordinarily includes a gate at the point where a sidewalk leads to the front door. Such fences have obvious purposes other than excluding the public, such as discouraging dogs, children, handbill deliverymen and others from walking across the front lawn and flower beds. In the absence of a locked gate, a high solid fence blocking the front yard from view, a written notice to keep out or “beware of dog,” or perhaps a doorbell at the front gate, anyone having reason to talk to the residents would be expected to open the front gate, walk up to the house and knock on the door. Likewise, if a resident was in the front yard too far away from the *Supp. 15 fence to talk with easily, it would be entirely natural and appropriate to open the gate without asking permission and to approach the person in order to converse in normal tones. At least, this would be the case in the absence of a warning from the occupant that the visitor was unwelcome.
There is simply no reasonable expectation of privacy in the front yard of a residence under such conditions. It is no more closed off to the public, expressly or impliedly, than any other front yard with a sidewalk to the front door. Even without a fence the public is not expected nor encouraged to walk wherever desired through the front yard; that’s why a sidewalk is provided. The fact that a chain-link fence is installed is not commonly considered a deterrent to entering a front yard to the same extent as if unfenced, in the absence of other evidence to the contrary.
The situation is entirely different where a backyard entry is involved, with or without a fence. Here again, common sense and knowledge of our everyday customs tell us that members of the public, other than friends and relatives, are not normally expected nor invited to enter the backyard of a residence in the average community.[1] Such conduct on the part of a stranger would be considered quite unusual and very likely resented. That portion of a residence is looked on by most home occupants as “private property,” not to be invaded lightly. Significantly, none of the cases cited by defendant or the trial judge refer to front yards, but only to backyards, where members of the public having business with the occupants are not normally invited.
The California Supreme Court recognized the test for determining reasonable expectation of privacy in the following language: “... we do not rest our analysis exclusively upon such abstractions as ‘trespass’ or ‘constitutionally protected areas’ or upon the physical differences between a telephone booth and the land surrounding a residence; we do, however, look to the conduct of people in regard to these elements. Taking into account the nature of the area surrounding a private residence, we ask whether that area has been opened to public use; if so, the occupant cannot claim he expected privacy from all observations of the officer who stands upon that ground; if not, the occupant does deserve that privacy.” Lorenzana v. Superior Court (1973) 9 Cal.3d 626, 638 [108 Cal.Rptr. 585, 511 P.2d 33].)
*Supp. 16 The prosecution argued at the close of the evidentiary hearing that it could be assumed that persons having deliveries to make to defendant’s residence would go through the unlocked gate to do so. The trial judge rejected this assumption “because Mendoza said that does not happen at his house.” This was erroneous reasoning. The determining factor is what reasonable expectation of privacy was exhibited (Lorenzana v. Superior Court, supra, p. 636), not what defendant subjectively claimed to be the situation.
When the officer approached defendant in the front yard of his home, he was not just “snooping” or acting on a “hunch” in calling on the latter. The officer had information that defendant was dealing in and using heroin. This was sufficient to engender a reasonable suspicion of defendant’s involvement in criminal activity, justifying a temporary stop and questioning. (In re Tony C. (1978) 21 Cal.3d 888, 894 [148 Cal.Rptr. 366, 582 P.2d 957].) The arresting officer first became aware of defendant’s visible evidence of being under the influence of heroin after coming close to defendant and observing him. The officer was then in an area open to the public, where defendant could not “claim he expected privacy from all observations of the officer.. .. ” (Lorenzana v. Superior Court, supra, p. 638). Accordingly, there was no violation of defendant’s constitutional right to be secure from unreasonable searches or seizures. (U. S. Const., Fourth Amend.; Cal. Const., art. I, § 13.)
The order suppressing the evidence in this case is reversed. The matter is remanded to the trial court for further proceedings against defendant on the complaint.

 We take judicial notice that the neighborhood where this incident occurred is not one of those affluent areas where a “tradesman’s entrance” may commonly be found at the rear.