Filed 7/10/15  P. v. Vasquez CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C077226 |
| Plaintiff and Respondent, | (Super. Ct. No. 14F03561) |
| v. | |
| ABRAN VASQUEZ, | |
| Defendant and Appellant. | |

After a motion to suppress the evidence against him was denied, defendant Abran Vasquez pled no contest to being a felon in possession of a firearm and was sentenced to two years in prison.  On appeal, he contends the court erred in failing to suppress the evidence against him.  We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

At 10:19 p.m. on May 23, 2014, uniformed Sacramento Police Officer Brian Surjan was driving his marked patrol car in the area of North Avenue and Palmetto Street when he saw a bicyclist wearing a backpack pedaling on the wrong side of the road

1

toward him without a headlight. As the officer drove closer, the bicyclist, who was later identified as defendant, immediately got off the bicycle, dropped it, and went into the front yard of 901 North Avenue. As defendant entered the front yard, the officer (who was now out of his patrol car and standing outside of the yard) told him to stop. Traveling on the wrong side of the road and biking at night without a light are violations of the Vehicle Code. Defendant did not stop and "continued to walk away from [the officer]." The officer decided not to go inside the yard because there were two pit bulls inside the yard, which was surrounded by a four-feet high chain-link fence with a rolling gate. The front yard was "fairly large" and the house was set "fairly far back." Defendant continued walking toward the house, despite the officer telling him again to stop. Defendant turned toward the officer, but continued walking toward the house, backwards, asking why. The officer said he needed to talk to him and to come toward the officer. Defendant kept asking why and what he did wrong, in an argumentative tone.

The officer said he had broken the law by riding without a bike light and that the officer was ordering him to come toward the officer. The officer ordered defendant more times to walk over to him. After about two minutes of the officer telling defendant that he needed to walk over to him, defendant took off his backpack, dropped it on the ground, and walked over to the officer. At the same time, a woman came out of the house and began walking toward them. Defendant yelled at the woman to take the backpack inside, but the officer told her not to touch the backpack and take the two dogs inside. Eventually, she did "grab[] the dogs." The officer opened the gate and handcuffed defendant for resisting and delaying the officer in his duties. A sergeant arrived and retrieved the backpack from the yard, which was 15 feet from the entrance of the yard, and put the backpack into the patrol car. Defendant was also put inside the patrol car. The police then searched the backpack, which had a rifle containing a live round, a key ring with six shaved keys, and seven bottles of prescription medications belonging to others.

DISCUSSION

Defendant contends "the trial court erred in denying the motion to suppress because the warrantless entry into the curtilage of [his] property was without an exception to the warrant requirement, there was no probable cause to arrest him, and the search of his backpack was not justifiable as a search incident to arrest."

We begin with the probable cause to arrest defendant. It is uncontroverted that the officer saw defendant commit two Vehicle Code violations: riding at night without a light and riding a bicycle on the wrong side of the street. (Veh. Code, §§ 21201, subd. (d)(1), 21650.1.) Based on these traffic infractions, the officer had a basis, at the very least, to detain defendant. Then, when defendant ran into his front yard and refused the officer's repeated instructions to stop, there was probable cause for the officer to believe defendant was resisting or evading him in the performance of his duties, i.e., trying to detain defendant for the Vehicle Code violations. (*People v. Curtis* (1969) 70 Cal.2d 347, 356, fn. 6 ["[Penal Code] section 148 penalizes even passive delay or obstruction of an arrest, such as refusal to cooperate"], disapproved on another ground in *People v. Gonzalez* (1990) 51 Cal.3d 1179, 1222, fn. 19; *In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1330 ["a reasonable inference could be drawn that appellant willfully delayed the officers' performance of duties by refusing the officers' repeated requests that he step away from the patrol car"].)

Defendant's attempt to claim that his conduct in not complying with the officer's orders immediately did not rise to the level of resisting an officer because all he did was "fail[] to respond with alacrity to police orders" (*People v. Quiroga* (1993) 16 Cal.App.4th 961, 966) belies the record. He did much more. He refused the officer's initial demand to stop when he entered his front yard. He refused the officer's demand to stop once inside his front yard. He refused to come toward the officer when the officer said to and that the officer needed to talk with him. When the officer told defendant what he had done wrong (i.e., breaking the law for riding without a bike light), defendant still

3

did not heed the officer until two minutes into the encounter. This sequence of events was more than just a simple failure to respond to the officer with alacrity.

Because the officer had probable cause to arrest defendant, the officer also had the right to seize and search his backpack incident to that arrest. A police officer may, incident to a lawful arrest, conduct a contemporaneous warrantless search of the arrestee's person and the area " 'within his immediate control,' " i.e., "the area from within which he might gain possession of a weapon or destructible evidence." (*Chimel v. California* (1969) 395 U.S. 752, 763 [23 L.Ed.2d 685, 694].) Defendant had just dropped the backpack and it had been in his immediate control on his back. It is well established that, incident to an arrest, the police may search articles, such as a purse, that are customarily carried by a person and are normal extensions of the person within his or her area of control. (*In re Humberto O.* (2000) 80 Cal.App.4th 237, 243.) It mattered not that defendant did not have the backpack on him for the search to still be considered incident to his arrest. "[S]o long as the purse is in use by the arrestee at the time of her arrest, it does not need to be on her person at that moment to be subject to search." (*People v. Ingham* (1992) 5 Cal.App.4th 326, 331.)

Finally, the officer and the sergeant did not violate the Fourth Amendment or trespass in going inside the gate to retrieve defendant or the backpack.[1]

As a general rule, police officers have no right to make a warrantless entry into a home or its curtilage. (*United States v. Karo* (1984) 468 U.S. 705, 714-715 [82 L.Ed.2d 530, 541-542].) Curtilage is the outside area "immediately surrounding and associated with the home . . . to which extends the intimate activity associated with the 'sanctity of a [person]'s home and the privacies of life.' " (*Oliver v. United States* (1984) 466 U.S.

---

[1]     Defendant argues that he and his backpack were inside the curtilage and facts here do not establish exigent circumstances justifying a warrantless entry by police into his curtilage to prevent imminent harm, escape, or destruction of evidence.

170, 180 [80 L.Ed.2d 214, 225].)  Nonetheless, not every warrantless entry by police upon curtilage to arrest or to detain implicates the Fourth Amendment.  " '[[T]he California] Supreme Court has made clear that a police officer who makes an uninvited entry onto private property does not per se violate the occupant's Fourth Amendment right of privacy.  The criterion to be applied is whether entry is made into an area where the public has been implicitly invited, such as the area furnishing normal access to the house.  A reasonable expectation of privacy does not exist in such areas. . . .' [¶] ' "[T]he test of reasonableness is dependent upon the totality of facts and circumstances involved in the context of each case [citations] and does not turn merely upon whether a physical trespass is manifested." ' " (*People v. Thompson* (1990) 221 Cal.App.3d 923, 942.)

"Fencing around the front yard of a residence is a common situation and ordinarily includes a gate at the point where a sidewalk leads to the front door.  Such fences have obvious purposes other than excluding the public, such as discouraging dogs, children, handbill deliverymen and others from walking across the front lawn and flower beds.  In the absence of a locked gate, a high solid fence blocking the front yard from view, a written notice to keep out or 'beware of dog,' or perhaps a doorbell at the front gate, anyone having reason to talk to the residents would be expected to open the front gate, walk up to the house and knock on the door.  Likewise, if a resident was in the front yard too far away from the fence to talk with easily, it would be entirely natural and appropriate to open the gate without asking permission and to approach the person in order to converse in normal tones.  At least, this would be the case in the absence of a warning from the occupant that the visitor was unwelcome." (*People v. Mendoza* (1981) 122 Cal.App.3d Supp. 12, 14.)

Similar to *Mendoza*, there was no reasonable expectation of privacy in the front yard here.  The property had a substantial front yard and the house was set fairly far back, requiring someone who wanted to knock on the front door to come through the chain-link

5

fence; there was no warning to beware of the dogs or telling intruders to keep out; the chain-link fence was not locked to exclude intruders; and the chain-link fence was low enough that people could look inside the fence and indeed the officer here could see everything that was happening inside the front yard.  Accordingly, the officer did not need a warrant to enter the yard.

DISPOSITION

The judgment is affirmed.


                                               _____ROBIE_____, J.


We concur:



_____BLEASE_____, Acting P. J.



_____MURRAY_____, J.


6